Erasto Gomez-Jimenez, and Mr. Sun, whenever you get ready, we'll hear from you. May it please the Court, my name is Paul Sun, I represent Erasto Gomez-Jimenez. The District Court erred in this case when it sentenced Mr. Gomez-Jimenez based on a guidelines range that incorrectly enhanced Mr. Gomez-Jimenez's sentence for using a minor to commit the offense. That's Guidelines Section 3B1.4. There was insufficient evidence that Mr. Gomez-Jimenez himself used a minor to commit the offense. And 3B1.4 enhancement cannot be based on the This is a drug case. The case started as a series of controlled drug buys involving one of the other co-defendants, Aaron Juarez Gomez. Mr. Erasto was arrested at the home of Aaron. That's where Aaron lived. That's where the guns and drugs were found. The minor involved was the son of the co-defendant, Aaron Juarez Gomez. He lived with his father at that same house. That's the minor involved. Mr. Erasto Gomez-Jimenez pleaded guilty to one count of drug conspiracy count, one count of possession with intent to distribute drugs. At sentencing over the defendant's objection, the Court found that the guidelines range, including these enhancements, and imposed a guidelines sentence, 180 months. Immediately thereafter, at the very end of the sentencing hearing, the District Court said, it imposed an alternative sentence. It said, if I'm wrong about these guidelines enhancements, I would impose the of all the 3553 factors I've just described. He did, Your Honor. And the difference, though, is he's going above the guidelines. The entire analysis that the Court goes through during the sentencing hearing is to discuss the 3553A factors within the context of the guidelines range. What he then does at the end is effectively enter a variant, and he calls it a variant sentence. He goes above the guidelines range and says, I'm going to do the same thing. So in effect, the other 3553A factors, and of course, the guidelines range itself is an important 3553A factor. The Court says, initially, I find it's appropriate to sentence what the Sentencing Commission says is the range here for this kind of defendant in this kind of case. I'm going to sentence this defendant within the guidelines range. But if I'm wrong about the guidelines range, based on those same 3553A factors, without further explication why that now justifies an above guidelines range. But the sentence, assuming he was correct on the enhancements, was within the guidelines. Yes, sir, Your Honor. It was within guidelines range. The government sought a within guidelines range sentence. Mr. Gomez-Gimenez was arguing for a lesser sentence. He raised two enhancements. I'm focusing on the 3B1.4 use of a minor enhancement. Well, even if we were to assume that you're correct and that there was an error in using the minor enhancement, why wouldn't the Savion Matute line of cases in view of the alternative holding, why wouldn't that basically make that a moot argument? A couple points there, Your Honor. Savion Matute and none of the other cases support the idea that you can insulate an erroneous sentence with another erroneous sentence. That's what happened here. The alternative variant sentence is a procedurally unreasonable sentence because the court doesn't justify going above the guidelines range. Gall says one of the significant procedural errors among those things that the court is supposed to look at always in every, this court is supposed to look at in every sentencing case, was there a significant procedural error in sentencing the defendant? Well, in our prior precedent, that's exactly what happened, wasn't it? There was a, there is a procedural error and the question is can't the court indicate that there may be some doubts about the enhancement with respect to a minor, it's a two-level enhancement, and my view is if I'm wrong on that, I have considered all the other factors and I think this is the appropriate sentence. Now, it sounds to me that that's directly in line with our precedent on that. Judge, the difference in Savion Matute and Hargrove is that the court there initially imposed an above-guideline sentence, so its rationale, its explanation that this court can look at justifies already an above-guideline sentence. It says the guidelines range that I think is the right one is insufficient and here's the reasons why, and I'm going to go above that, an upward variant sentence. Then, if there's a guidelines error, it reduces, the guidelines range is less, but still the judge is saying. What was the sentencing range in this case if the enhancement was inappropriate? If just the two-point enhancement for use of a minor, it would have been 135 to 168 months, and the judge imposed 180, correct. And that 3B1.4 enhancement is error because initially and primarily. I'm asking about that. This, I think the district judge could conclude that this trailer was a stash house. One whole room was devoted, was empty, the master bedroom and the amount of drugs and guns there and the amount of money and the activity going in and out of there over quite a period of time. Seems to me it would indicate it was functioned as a stash house. And there was evidence that Aaron Jr. went out on some of the transactions, drug transactions, was present at those. He paid the rent on occasion for the stash house and that he worked with Pedro to learn how to make liquid drugs. And it seems to me he was more than just a resident there. It seems to me he was either being trained or encouraged or was just an active participant in the whole operation. The standard is clear error and the district court found that those facts were enough to show his involvement, his engagement. What was wrong with those? Why aren't those facts sufficient? Because, Your Honor, what the government has to show, the government has the burden, is that Erasto directed, it requires his affirmative acts, used a minor, that Erasto used a minor, that he directed. The guidelines commentary uses... Wasn't there evidence that Erasto, first of all, used the stash house? He lived there too in a living room on the floor. I don't know if it's temporary or not. It sounds pretty transactions, drug transactions, didn't he? Your Honor, I don't think that second detail is part of the record here. It is the case, not in the sentencing, but in the trial. This court is going to take up the trial of Aaron Juarez Gomez in the next case. That case went to trial and there was evidence that Erasto lived in the house that was owned by Aaron, or rented by Aaron Juarez Gomez. But none of those actions, really the only act that shows any of these individuals affirmatively using Aaron, the youth, is Pedro, who is Erasto's brother. There's an incident that's described in the pre-sentence report and then discussed in the sentencing hearing and the court was very careful. The judge was actually reading the confidential informants report in the sentencing hearing and said, on this one occasion, Pedro took Aaron with him and got Aaron to help him convert some liquid cocaine into crack. That's Pedro. Erasto's trial counsel asked the court to clarify... In this case, during the sentencing, was any evidence in this case presented that Erasto took Aaron Jr. out on drug deals? None. None. Again, the judge was very careful. He's reading this report from the confidential were out on a drug deal. It doesn't say anything about Erasto bringing him along, inducing him, directing, and again, the... Well, that's taking him on a drug deal is pretty... Well, the evidence would be that Pedro took him. Well, I thought Erasto was there, too. Well, he was there. Mere presence is not enough. The government concedes that. All of the cases say mere presence is not enough. There is an occasion where Pedro is actively using Aaron. The evidence is undisputed that Erasto was not present and that Erasto didn't know about it at all. Those, the affirmative acts, and Your Honor recited some of them, the affirmative evidence that's in the record is, for example, that Aaron one time apparently paid the rent. Well, if his father gives him the rent money and the lessor makes it out because Aaron shows up with the rent money, that's not anything other than indicating... If this is a stash house... Well, he's living there, Your Honor. He is living there. I understand, but... With his father. I mean, it's a little bit like being the driver on a drug deal. Sure, the driver isn't the one selling drugs, but the driver's culpable. He's participating in the transaction, and if the Aaron Jr. pays the rent for a stash house, that's obviously a stash house. The drugs and guns are all over, and he's actually... There's evidence that he's personally been involved in drugs with Pedro, even though it may not have been a Durasto's deal. We're not talking about a lad that's just innocently and ignorantly living in his bedroom. He's been taken out on drug deals. He's been mixing drugs. Now, the question is, what did Durasto do? Durasto's participating in this stash house. He's part of a conspiracy. He pleads guilty to a conspiracy, and the advancement of the conspiracy is the maintenance of that house. Well, and Your Honor, under U.S. v. Moore and a review of the language and the structure of the guidelines, 3B1.4, enhancement for use of a minor, can't be based on the conduct of others. Moore says that in connection with the abusive position of trust, 3B1.3, but all of those role in the offense adjustments are based on an individualized determination, have to be based on an individualized determination, that this defendant did something to warrant an exceptional sentence, an enhancement to his sentence. He or she has to do something himself, not because some co-defendant or co-conspirator did. The language of 3B1.4 starts, the defendant used a minor to commit the offense. All of those... There's a definition of used in there, isn't there? It is, Your Honor, and they are all very active words. Directing, commanding, encouraging, recruiting, all very active words, and that's what the case law says. It's got to be affirmative acts by... Is there training in there? I think training is one of the words. And again, I would say the evidence in the record is that Pedro involved Aaron in one drug deal, and under the application of the language and the structure of the guidelines, Erasto is not responsible for Pedro's use of a minor. And these affirmative acts, again, that are cited... Your position on these particular enhancements is essentially, as I understand it, there can't be any Pinkerton-type liability attributed to the particular defendant. Yes, Your Honor. It has to be an in personam action of his or hers. Yes, Your Honor. And that's more... This court in US v. Moore, again, it's looking at a different guidelines section, but it says specifically the role in the adjustments cannot be based on the conduct of a co-conspirator. That's clear, not just in 3B1.3, but 3B1.4, the language and the structure of the guidelines is equally supportive of that analysis for the guideline that's applicable here, 3B1.4. Thank you. Thank you. Mr. Rogers? Good morning. May it please the Court, my name is Joshua Rogers, and I represent the United States. The sentencing guidelines include a very broad description of what it means to use a minor, and that includes training and encouragement, and as this Court noted in Feaster, it can also include otherwise engaging the minor in the charged offense. Do you agree with opposing counsel that these particular enhancements are not subject to liability by virtue of some sort of Pinkerton attribution from another co-conspirator or another co-defendant? We do not agree with opposing counsel. We would say that under the plain language of the guidelines, 1B1.3, this defendant, Erasto, is liable for the behavior that this Court has already found in this past December in opinion was, in fact, affirmative use of the minor, and that he can, in fact, be found liable for his co-conspirator's behavior. Well, but can he be found liable because of actions of Pedro? Yes, Your Honor, that's who we're referring to. This Court has already stated that Pedro affirmatively used a minor, and therefore, we're saying, pursuant to the law of the case, that he is liable for his co-conspirator's behavior in using that minor and training him how to cook crack cocaine. As I understand opposing counsel's argument, he cites various opinions from other courts of appeal that seem to say that they disagree with that view. There is a circuit split. We agree with the split as far as it goes with the First, Second, Eighth, and Eleventh Circuits that find that, pursuant to 1B1.3, defendants should be liable for all the acts that they can foresee their co-conspirators committing, and that particularly makes sense when we look at the role of the offense adjustments in the introductory commentary that says, quote, the determination of a defendant's role in the offense is to be made on the basis of all conduct in the scope of 1B1.3. We're not asking this Court to overrule more this That's not pure Pinkerton. If a court relies on Pinkerton, because 1B1 focuses on what's foreseeable to Erasto, and whereas Pinkerton suggests that it can be a little broader than that, what is foreseeable to the conspiracy, or what is foreseeable as the conduct of the conspiracy, but clearly 1B1 wants relevant conduct linked to the defendant. In this case, he's convicted of conspiracy, and the relevant conduct is what is foreseeable to him, and the only question then is, is he imputed with the conduct of his brother Pedro and Aaron Sr. in their use of Aaron Jr. during the course of the conspiracy. And we would argue that it's absolutely reasonably foreseeable to Erasto that his brother Pedro and the boy's father would be using him for this drug conspiracy. They are living under the roof of this stash house where there are about 10 kilos total of cocaine, about $60,000 cash and firearms lying around, and in fact, when the officers arrived, the record shows that in fact, liquid cocaine was drying into crack cocaine. All of these defendants are very well aware that this minor is involved in part also because these two brothers have taken him on multiple drug deals, and we know from the Rule 35 hearing that in fact, those drug deals resulted in the sale of five kilos of powder cocaine. So it wasn't as if they were going with this minor to sell. Where's that evidence in this record? It is in the Rule 35 on JA95. The United States made the proffer to the court that in fact, that was the amount of drugs that were sold with the minor. Erasto and Pedro actually took him on deals, and there was a grand total of five kilos of powder cocaine that were sold with this minor. So it's not as if this was one crack drug. What day was it that Erasto was present? And the minor was there? What day was it? You say it's in the record. What date was that? It is not specified in the record which date Erasto was with the minor, but what is specified is that on each of these deals, Erasto and Pedro are with the minor. How many deals are suggested? Multiple. And you say that's a JA95? Yes, Your Honor. And keeping in mind, when the police knock on the door, the minor opens the door, and Erasto is the defendant who is there with the minor. And what is happening? There at the entrance of the house, inside, there is liquid cocaine, which liquid cocaine can't be sold on the street. Liquid cocaine has to be dried in order to be made into a sellable product. Counsel, when you asked this question, you said, look a little more closely at the reference you give to the JA, but let's assume absolutely what you said, that he was present, the minor was present. Line that evidence up with the active verbs required for participating in the minor. Which one is it? Encouraging and both training. When you have training... Otherwise engaging. Otherwise engaging through the officer. Okay, right. What is the engagement beyond presence in the record? Now, listen carefully. What is the evidence of engagement other than presence in the record? When you have a minor who is... In the record now. Not when you have a minor. I mean, what is the evidence? When we have a record that reveals to us that there is a minor... Present. Present, living in this stash house. He has to live somewhere. He does have to live somewhere. And unfortunately, his father brings him into a drug den. He's not being tried for being a bad parent. You're conflating a different thing. If he was in a juvenile domestic relationship, you're right, you'd probably throw the book at him, but we're not here on being with a bad parenting. The question is, what is the evidence that he was engaged other than present? Or trained other than... Now, Pedro, clearly, you had that. I'm talking about the rest of them. When we have a minor who is in a drug den where drugs are being processed. In fact, drugs are being processed when the minor answers the door. We have liquid cocaine drying on the desk. That means that liquid cocaine is being processed into a sellable form. When that minor is being taken on multiple drug deals where he participates in the sale of five kilos of cocaine, it doesn't require a defendant walking in a classroom, putting a board up and saying, we're going to do A, B, and C. Some of the most effective training and encouragement that can happen is simply having the minor present. That's training. That's encouragement. It may be, but the statute doesn't give you that one. It could be. No, it doesn't. It says his presence is not enough. And you said he was participating. What is the evidence that he participated? He is there. That's presence. It's not mere presence because what the Fifth Circuit... I'm asking you, give me what's beyond presence. That's all. Simple question. What is, what is, what do you have other than presence when a rasto is with him? The, when, what we're referring to, and I think it's important to talk about Fifth Circuit case of Molina is the one that says mere presence isn't enough because what it's saying is it's not enough to have some incidental, it's just incidental that the minor happens to be there. The baby's in the car seat. That's not what we're dealing with here. Incidentally said presence is not, I'm just asking you, what do you have other than presence? And what we have here is a minor who is learning from a rasto when the officers walk in how to dry liquid cocaine into crack cocaine. And going on a drug transaction is not just presence. That's actually an active going out for a particularized deal. We don't have to prove that while they were going on multiple deals and showing this minor how to deliver this manufactured product that came out of this stash house, we're not required to prove that the minor was receiving A, B, C, D instructions from these two brothers. Taking him with them on these multiple drug transactions is a form of training. It is encouragement. Actually, hypo, if you had a mother who's involved in prostitution, but she's also a single mother and her 14-year-old, 12-year-old daughter goes with her because she has nobody to babysit her and she's present while she's turning tricks, is that participation in prostitution with a girl? I think it's an excellent example. If a mother brings her 16-year-old daughter to live in a brothel and lets her hang out with a couple of pimps and then tries to say, oh, I'm sorry, I'm shocked that she became a prostitute. I didn't do anything to encourage her. That's as encouraging as it could be for someone to bring a child under that particular circumstance and then expose them to it repeatedly, take them out with them while they're prostituting and to say, I didn't encourage them at all to get involved. It's an absurd argument for a defendant to make that argument, essentially. Again, what you're talking about is parenting. It absolutely is a horrible example of parenting, but the statute doesn't question about whether. Here's the problem. If the child was a complete stranger, then you have a lot more, but there is contingency. They're related. He lives there. That's what I'm saying. You'd make, basically, the difference is, I guess, the poorer you are, the more vulnerable you are because you don't have a place to put your children while, I guess, if you have money, you can have a babysitter and you go and do this. All you have is presence. I don't think that we're dealing with poor folks here. We have $60,000 cash in this house and plenty more in bricks of cocaine. Where do they live? They do live in a trailer, but nonetheless, what the mistake that defendant wants to lead this court into is to, as he mentioned, the only word that he initially mentioned was directing from the sentencing guidelines. The sentencing guidelines say directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting. It's a very broad concept. What we're dealing with here is, in fact, a situation where if this is an encouragement with a couple of adults taking this minor on multiple drug deals where he goes along where they're selling five kilos of powder cocaine. Does it also have in there otherwise engaging? That is from Feaster, actually. It's the only opinion in which this court has spoken directly or substantively to 3B1.4 and it adds, in addition to it, otherwise engaging. If this isn't otherwise engaging, if this isn't encouraging the minor by bringing him along and including him, then nothing is. We have interns at our office. We let them come behind the closed doors. We take them into the courtroom. We don't necessarily teach them how to do things A, B, C, but we are certainly training them by bringing them along with us. He's an intern essentially in a stash house. They're effectively bringing him into it and by doing so, encouraging and training him as well. If we were to assume, just for purposes of argument, that we disagreed with the interpretation the government puts forth on this regulation or simply didn't see the necessity to get into the circuit split question, tell us why the Savion, Matute, and Hargrove line of cases in Keene, amongst others, wouldn't control the outcome? The reason why... Or what, I think, is what you would say. I'm sorry, Your Honor. I said you would say it would control the outcome. Savion, Matute, the problem for the defendant is even if the district court procedurally erred, it did give an alternative variant sentence that was well supported by the record and it was substantially reasonable. The defendant states that the district court provided no justification or explanation. That's simply not true. The court went through, and I can assure the court wouldn't want me to read every quote, that this particular judge in four different pages explained why he found this was a particularly appropriate sentence. But he did discuss the nature and circumstances of the offense, the seriousness of it, the history and characteristics of this defendant, the need to protect the public, and the need to promote the respect for the law. And he didn't just name off 3553A factors. He very specifically walked through why this was an appropriate sentence. That alternative variant sentence under Savion, Matute, does in fact provide an alternative basis for this court to uphold the district court, contrary to what the defendant argues. I have a 28-J letter that just came out. The counsel indicates that our recent decision in Montes Flores negates that argument. What's your response to his argument? Montes Flores dealt with a district court that didn't make clear that that's what it was doing, was providing an alternative variant sentence. And this court stated, we're not going to read the tea leaves and try to read into the record something the district court didn't do. It is abundantly clear this district court specifically said, pursuant to Savion, Matute, and Keene, I am doing this. And then this district judge had already given a litany of reasons in which it gave an individualized assessment under 3553A justifying the 180-month sentence. With respect to the firearm enhancement, this court has already found that Pedro, his co-conspirator, was liable for the behavior of his co-conspirators, and therefore, necessarily it would follow that this defendant as well would be liable. And we would argue that the district court was not procedurally in error. It did give a substantively reasonable alternative variant sentence. And the court can affirm on either of those bases. And therefore, we would ask this court to do so. And unless there are any further questions, I'll take my seat. All right. Thank you, Mr. Rogers. Mr. Son? May it please the court. The first rendition of the introductory comments to 3B1.44, actually the whole of Chapter 3, Part B, all of the ruling defense adjustments does talk about the relevant conduct standard, 1B1.3. But this court in U.S. v. Moore answered that question and said, counsel just said, we're not asking you to overrule U.S. v. Moore. Well, this court is going to have to do that because Moore looked at that very issue and said that does not mean that you incorporate or allow an enhancement based on the conduct of one of the co-conspirators. That's what Moore says. But, you know, there is a distinction, and this is overlooked by counsel very frequently, between a Pinkerton liability and 1B1.3 liability. Because 1B1 requires foreseeability to the particular defendant. I agree with that, Your Honor. The standard under the sentencing is foreseeable to the arrest in this case. And Moore cites both of those, Pinkerton and 1B1.3. Second point, I'm sure the court will look at JA95. It doesn't say that Aaron was on each of these deals. And I would ask the co-conspirator, the statement by the confidential informant, and he's looking at that and says in the record what it is in there and not in there about Erasto. And then last, with regard to the… Well, what's he say? He says, Erasto was, Aaron was there on at least another deal. That means another one besides this one where Pedro was there and used Aaron So he's on at least two. At least two, correct. And that's the point that the judge is making by reviewing… He's looking at it on the record and reciting that. And then lastly, on the harmless error point, and I don't mean to belabor the point, but Civilian Matute and Hargrove are different because there the judge is already in his initial sentence imposing an above-guideline sentence. And he's justifying it by saying these are the reasons. These are the reasons why the guidelines range is not sufficient. Even though the Sentencing Commission has figured out in the kind of the mine run case where this kind of offender in this kind of offense, this is an appropriate sentence, sufficient but not greater than necessary to meet the goals of sentencing. I don't find that sufficient in Civilian Matute and Hargrove. Even if the circumstance is different, it seems like the concept is certainly the same. Tell us why you think in your case that makes a distinction of any material difference. Well, I would go back again, and I don't mean to be flip about it, but you can't insulate an erroneous sentence by saying I'm going to impose another and different erroneous sentence. And here, the goals of this court's appellate review needing to be able to know what the district court would have done, that's satisfying. There isn't any question. Judge Devers said if I had a different and erroneous sentence, replace the original erroneous with another erroneous? Yes. Why is it erroneous? It's procedurally unreasonable. The court has to say why it is that a guideline sentence is not sufficient and didn't do that. In fact, just prior to that, he said all of these 3553A factors. What page is his sentencing on? Page 170 is where he recites the alternative variant sentence, and he refers to the 3553A factors, which he's just gone through, and I agree with counsel. The judge went through those in the course of the sentencing hearing and said based on all of those things, I find that a within-guideline sentence, and that's what the government asked for too, a within-guideline sentence is the appropriate sentence, sufficient but not greater than necessary to meet the goals of sentencing. Now he says those same factors without saying how otherwise somehow justify an above-guideline sentence, and that's respectfully neither the initial sentence imposed nor the alternative sentence are reasonable under this court in the Supreme Court's jurisprudence, and we respectfully ask the court to vacate and remand for resentencing. Thank you. Thank you, Mr. Son. I do note that you're court-appointed, and I want to recognize that fact and express our appreciation for your service. Thank you, Your Honor.
judges: Paul V. Niemeyer, Roger L. Gregory, G. Steven Agee